CECILIA G. M. PRESTON AND OTHERS, APPELLANTS, *v.* ELMER E. PALMER AND OTHERS, RESPONDENTS.*

*Will — the right of a devisee to take thereunder is not affected by the fact that he willfully murdered the testator.*

This action was brought to have the will of one Francis B. Palmer, so far as it devised and bequeathed property to the defendant, Elmer E. Palmer, declared

---

* Decided January 4, 1887.

void, upon the ground that Elmer E. Palmer willfully murdered the testator in order that he might prevent a revocation of the will and have the immediate enjoyment of the property. It was conceded upon the trial that Francis died of strychnine poison, and that Elmer had been convicted of murder in the second degree for killing him, and been sentenced to the Elmira State Reformatory therefor, where he was then imprisoned.

*Held,* that under the laws of this State Elmer was entitled to take the property devised and bequeathed to him by the will of his grandfather, although he himself willfully murdered him.

APPEAL from a judgment in favor of the defendants, entered in St. Lawrence county upon the report of a referee.

The object of the action was to have the will of Francis B. Palmer, so far as it devised and bequeathed property to the defendant, Elmer E. Palmer, declared void, upon the ground that Elmer E. Palmer willfully murdered the testator, in order that he might prevent a revocation of the will, and have the immediate enjoyment of the property. The case was referred to the Hon. W. H. Sawyer, who found the following facts : For many years prior to April 25, 1882, Francis B. Palmer was the owner of the real property described in the complaint (a farm of about 130 acres), and a large amount of personal property. April 25, 1882, he died of strychnine poison, willfully administered to him by the defendant Elmer Palmer, with the intent and for the purpose of producing his death. Francis made his will in 1880. It gives his two daughters, the plaintiffs, fifty dollars each, and the residue to his grandson Elmer. Elmer was aware of the provisions made for his benefit by his grandfather's will, and was desirous of entering into immediate possession of the property, and administered the poison with that intent. The testator had expressed disapproval of Elmer's conduct, and presumably would have altered his will had he known or suspected Elmer's murderous intent. The farm and personal property was worth about $5,500, and Elmer had no property of any considerable amount. The deceased left no descendants except his two daughters, the plaintiffs, and the grandson Elmer, a boy about twenty years old, who is unmarried, and had lived in the family of his grandfather for a long time.

The will has been probated and the administrator, with the will annexed, is acting thereunder and in possession of the property, and, unless enjoined, purposes giving Elmer the enjoyment of the

real and personal estate. It was conceded on the trial that Francis died of the strychnine poison. It was further conceded that Elmer was convicted at the St. Lawrence Oyer and Terminer of murder in the second degree for the killing of Francis by strychnine poison and was sentenced to the Elmira State Reformatory therefor, where he has since been and now is imprisoned. The tenant and widow are in default. The referee deduced, as conclusions of law, from these facts the following: That in this State the transmission of property by will and its descent are creations of statute, and governed thereby; that nothing remains to courts but to enforce the statutes as they are, the old maxims of the common law being overridden thereby; that no exception exists under the statute to the right to take by will on account of crime; that, though Elmer wickedly and maliciously compassed the death of the testator, he is still entitled, under the statutes, to take under his will and enjoy the fruits of his crime. To a request to find that the motive of Elmer in murdering Francis was to obtain the speedy enjoyment of the property, and to prevent the revocation by Francis of the provisions of the will beneficial to him, the referee responded; " I so find substantially." He refused to find, as a conclusion of law, that Elmer had no right to terminate the enjoyment by Francis of his property, or prevent the revocation of the will. He further refused to find that Elmer is estopped from claiming the benefits of the will, a possible revocation of which he prevented by his crime.

*Leslie W. Russell* and *C. E. Sandford*, for the appellants.

*W. M. Hawkins*, for the respondents.

LANDON, J. :

We concur in the conclusions of law found by the learned referee. Elmer E. Palmer is permitted by our law to take the property devised and bequeathed to him by the will of his grandfather, although he himself willfully murdered him.

The civil law, and the law in those countries which derive their jurisprudence from it, as we are instructed by the diligence of counsel, holds otherwise. (Domat Civil Law, part 2, book 1, tit. 1, § 3; Pothier on Successions, chap. 1, § 2, art. 4, § 2; Poullier, vol. 4, p. 113; Duranton, vol. 6, p. 111; Marcade, vol. 3, p. 42; Spanish Partidas, 994.)

The Civil Code of Lower Canada (sec. 610) copying from Code Napoleon (sec. 727), reads as follows : " The following persons are unworthy of inheriting, and, as such, are excluded from successions : 1. He who has been convicted of killing or attempting to kill the deceased."

Section 893, substantially like sections 955, 1046, Code Napoleon : " The revocation of a will may be demanded : 1. On the ground of the complicity of the legatee in the death of the testator."

It is manifest that we have omitted in our State to provide for the like contingency.

We are cited to the case of *The New York Mutual Life Insurance Company* v. *Armstrong* (117 U. S., 591), in which it was held that the beneficiary and owner of a policy of life insurance, by murdering the insured, forfeited all rights under it. The court said : " As well might he recover insurance money upon a building that he had willfully fired." That was a case of contract ; it certainly could not be held that the company had promised to pay the insurance money to the murderer of the person whose life is insured. Such a contract would be so unreasonable and against public policy, that the courts could well hold that the minds of the contracting parties had never met upon such a proposition, and if they had, the contract would be void.

But a will is not a contract. It is the designation in the forms prescribed by statute, by the testator, of the persons who shall enjoy his property after he is dead. The law has pronounced its sentence upon this murderer, and that sentence does not embrace incapacity to take under this will. If, as we do not think, he is, by virtue of the sentence, civily dead, he did not become so until sentenced, and the sentence did not relate back to the testator's death, and therefore could not affect any question at issue here: Perhaps this case will suggest to the law makers the imposition of such incapacity in like cases. But as it has not been imposed by the legislature, we cannot declare it.

The judgment is affirmed, with costs.

LEARNED, P. J., BOOKES, J., concurred.

Judgment affirmed, with costs.